**In re Alfred MIRULLA, Debtor.**

**Donna LANGLOIS, Plaintiff,**

v.

**Alfred MIRULLA, Defendant.**

**Bankruptcy No. 93–10167–MWV.**
**Adv. No. 93–1061.**

United States Bankruptcy Court,
D. New Hampshire.

Jan. 7, 1994.

Dennis Bezanson, Manchester, NH, Trustee.

Deborah Schachter, New Hampshire Legal Assistance, Manchester, NH, for Donna Langlois.

William Gannon, Wadleigh, Starr Offices, Manchester, NH, for Alfred Mirulla.

Gerry Karonis, Manchester, NH, U.S. Trustee.

*MEMORANDUM OPINION*

MARK W. VAUGHN, Bankruptcy Judge.

This adversary proceeding for determination of the dischargeability of a debt came before the Court on December 13, 1993, for hearing on the parties cross motions for summary judgment. Upon the moving and responsive documents, record made at hearing and the other files and records in this adversary proceeding, the Court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

*FACTS*

The defendant, Alfred Mirulla, filed a voluntary petition in this Court under Chapter 7 of the Bankruptcy Code on January 22, 1993. Prior to filing for relief, Mirulla had been embroiled in a landlord/tenant dispute with the plaintiff, Donna Langlois. The dispute between Mirulla and Langlois ultimately resulted in a civil state court action in which Langlois complained that Mirulla willfully violated New Hampshire's landlord and tenant laws and its Consumer Protection Act, including N.H. RSA 540–A:2, 540–A:3, I, II and IV, and 358–A:2.[1] The state court granted judgment in favor of Langlois by Order dated March 19, 1992 (hereinafter, the "Order"), and awarded Langlois monetary damages pursuant to N.H. RSA 540–A:4.[2] On

---

1. N.H. RSA 540–A:2 provides in pertinent part that "[n]o landlord shall willfully violate a tenant's right to quiet enjoyment of his tenancy or attempt to circumvent lawful procedures for eviction pursuant to RSA 540."
   N.H. RSA 540–A:3 provides in pertinent part:
   I. No landlord shall willfully cause, directly, or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to water, heat, light, electricity, gas, telephone, sewerage, elevator or refrigeration, whether or not the utility service is under the control of the landlord, except for such temporary interruption as may be necessary while actual repairs are in process or during temporary emergencies.
   II. No landlord shall willfully seize, hold, or otherwise directly or indirectly deny a tenant access to and possession of such tenant's rented or leased premises, other than through proper judicial process.
   ....
   IV. No landlord shall willfully enter into the premises of the tenant without prior consent, other than to make emergency repairs.

N.H. RSA 358–A:2 makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within [the State of New Hampshire]...."

2. N.H. RSA 540–A:4, IX, provides that "any landlord or tenant who violates RSA 540–A:2 or any provision of RSA 540–A:3 shall be subject to the civil remedies set forth in RSA 358–A:10, including costs and reasonable attorney's fees incurred in the proceeding...." N.H. RSA 358–A:10, which is part of New Hampshire's Consumer Protection Act, provides in relevant that "[a]ny party injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages.... If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount...."

April 29, 1992, Mirulla's motion for reconsideration was denied by the state court. No further appeal of the state court's judgment was taken, resulting in a final judgment being entered by the state court against Mirulla. Langlois now seeks a determination from this Court that Mirulla's obligations arising from that state court judgment are nondischargeable under sections 523(a)(4) and (6) of the Bankruptcy Code.[3]

The history of the dispute between Mirulla and Langlois is set forth in detail in the Order, which incorporates by reference numerous of the proposed findings of fact and rulings of law submitted to the state court by Langlois. The history of the dispute, as described in the Order, begins when on or about April 2, 1989, Langlois rented an apartment owned by Mirulla for $120 per week, utilities included. (Order at 1). Langlois was to occupy the apartment with her two children and boyfriend. *Id.* In approximately mid-May, the relationship between Mirulla and Langlois deteriorated as a result of Langlois' failure to pay rent and Mirulla's perception that Langlois was permitting her friends to reside in the apartment. *Id.* at 1–2. Mirulla subsequently took matters into his own hands and, without judicial process, attempted to evict Langlois. *Id.* at 5, 7.

Mirulla's nonjudicial attempts to evict Langlois, her boyfriend and her children took many forms. For example, on at least four occasions between May 21, 1989, and June 14, 1989, Mirulla summoned local police officers to Langlois' apartment with the goal of having them either order Langlois to leave the apartment or remove Langlois from the apartment. *Id.* at 10 (adopting facts # 10, 11, 23 and 41). On another occasion, Mirulla "forced his way into the apartment and ordered Ms. Langlois to leave." *Id.* (adopting fact # 12).

Lest it be thought that Mirulla's attempts to evict Langlois lacked imagination, beginning on May 28, 1989, Mirulla tried to gain Langlois' removal by terminating hot water service to her apartment. *Id.* (adopting fact # 14). When asked on June 2, 1989, by Langlois' attorney about the lack of hot water service, Mirulla refused to discuss the matter. *Id.* (adopting fact # 18). Although Mirulla claimed at trial that repairs necessitated the termination of hot water service, the state court expressly found that "[t]here were no actual repairs or emergencies necessitating the termination of [Langlois'] hot water service by [Mirulla]." *Id.* (adopting fact # 17). Altogether, Langlois was without hot water for nineteen days, forcing Langlois and her children to go elsewhere to bathe or shower during that time due to the lack of hot water. *Id.* (adopting facts # 21 and 22).

Mirulla's nonjudicial attempts to evict Langlois culminated on the night of June 14, 1989, when Mirulla locked Langlois out of her apartment while she was in Maine searching for new living arrangements. *Id.* at 3–4. When Langlois returned to her apartment that evening, gaining entrance through a window, she found the "inner doors removed, the stove disassembled and half the lights not working." *Id.* at 4. Approximately one-hour after Langlois returned, she was met by five local police officers who gave her fifteen minutes to "clear out the apartment." *Id.* Langlois took what she could carry from the apartment and spent the night at her mother's home in Haverhill, Massachusetts. Langlois commenced the state court action against Mirulla the next day. *Id.*

After trial, the state court found and ruled, among other things, that Mirulla's "action in evicting Ms. Langlois without judicial process was willful and knowing," violated N.H. RSA 540–A:2 and various provisions of RSA 540–A:3, and entitled Langlois to an award of damages under RSA 540–A:4, VII(b). *Id.* at 7, 10 (adopting fact # 43). Because Mirulla's violations were willful and knowing, the state court doubled the damages pursuant to RSA 358–A:10. The final damages awarded Langlois totalled $10,200, exclusive of prejudgment and post-judgment interest provided for by New Hampshire law. In addition, the

---

**3.** At the hearing on the parties cross motions for summary judgment, Mirulla's counsel conceded judgment on the section 523(a)(4) count. Accordingly, this memorandum opinion addresses only those issues relating to the dischargeability of the debt which is the target of Langlois' section 523(a)(6) count.

court awarded Langlois, as the prevailing party, costs and reasonable attorneys' fees. The costs and attorneys' fees approved by the court totalled $6,404.53.

## DISCUSSION

### A. *Summary of Substantive and Procedural Law*

■ Langlois asserts that she is entitled to summary judgment because the state court's factual findings collaterally estop Mirulla from arguing that the debt evidenced by the state court judgment is not the result of a "willful and malicious injury." Langlois acknowledges that the state court, unlike with respect to willfulness, did not expressly find malice. Langlois argues, however, that this court can infer malice from the factual findings made by the state court.

Mirulla does not dispute that his actions were willful within the meaning of section 523(a)(6). Mirulla instead argues that "although a lower court found that the debtor acted deliberately, there [was] no finding that the debtor knew his acts would cause harm to the plaintiff." Mirulla, in other words, argues that he is entitled to a trial to determine the second prong of section 523(a)(6), i.e., whether he acted with malice towards Langlois.[4]

### 1. *The Substantive Test for Nondischargeability*

■ In *New Hampshire v. Tinkham (In re Tinkham)*, 59 B.R. 209 (Bankr.D.N.H. 1986), Judge Yacos of this Court, after a thorough review of the authorities, established the framework and standards for determining whether a particular debt is dischargeable under section 523(a)(6) of the Bankruptcy Code. In *Tinkham*, Judge Yacos concluded that

> to establish a ground for nondischargeability of a debt under section 523(a)(6) of the Bankruptcy Code it must be proven that the debtor engaged in deliberate acts which he knew were certain or substantially certain to result in injury to property. If this is established the debt will remain

nondischargeable even though the resulting harm was not the *primary* purpose of the intentional acts.

*Id.* at 217. I also will adopt this standard. The relevant question in this case, therefore, is whether the state court's findings and rulings are determinative on the issue of whether Mirulla knew his deliberate acts were certain or substantially certain to result in injury to Langlois. *See In re McLaughlin*, 109 B.R. 14, 17 (Bankr.D.N.H.1989).

### 2. *Standards for Summary Judgment*

Summary judgment's role is "'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed. R.Civ.P. 56 Advisory Committee Note). When reviewing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Summary judgment is then appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A "genuine" issue exists if the evidentiary submissions, viewed in the light most hospitable to the nonmovant, will allow a rational factfinder to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are "material." *Id.* Only when disputes "over facts that might affect the outcome of the suit under the governing law" arise will entry of summary judgment be precluded. *Id.*

### B. *Analysis of the Summary Judgment Motion*

■ In 1991, the Supreme Court confirmed that the principle of collateral estop-

---

4. Because this Court grants Langlois' motion for summary judgment, it is not necessary to detail the arguments advanced by Mirulla in support of his own motion for summary judgment.

pel applies in bankruptcy court to bar the relitigation of factual or legal issues that were determined in a prior state court action. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Before this Court begins its analysis of whether Mirulla is collaterally estopped from asserting that his actions were not malicious within the meaning of section 523(a)(6) of the Bankruptcy Code, however, the Court must first determine whether it may, on a summary judgment motion, infer malice from the state court judgment.

■ At first blush, the mere act of drawing an inference from the record of the state court proceeding would appear to be the kind of factual determination that requires a trial. First impressions, however, are not always accurate. Other courts have invoked collateral estoppel to declare debts nondischargeable as debts for willful and malicious injury, even though the trial court did not expressly find malice. *E.g., Johnson v. Miera (In re Miera),* 926 F.2d 741 (8th Cir.1991) (affirming district court's decision which affirmed grant of summary judgment where conduct was targeted at creditor and debtor was certain or substantially certain that creditor would be harmed by unwelcome contact); *Smith v. Clark (In re Clark),* 116 B.R. 552 (Bankr.N.D.Ohio 1990) (summary judgment based on collateral estoppel appropriate when malice could be inferred from state court's findings); *Condict v. Condict (In re Condict),* 71 B.R. 485 (Bankr.N.D.Ill.1987) (inferring malice from state court's findings). Accordingly, the fact that the state court did not expressly find whether Mirulla's actions were malicious does not alone end the inquiry about whether collateral estoppel applies.

■ A federal court must look to state law to determine whether "issue preclusion flows as a consequence of previous state court

litigation."[5] In *Daigle v. City of Portsmouth,* 129 N.H. 561, 534 A.2d 689 (1987), Justice David Souter, then sitting on the New Hampshire Supreme Court, set forth the elements of collateral estoppel under New Hampshire law:

> [T]he doctrine of collateral estoppel bars a party to a prior action ... from relitigating any issue of fact actually litigated and determined in the prior action. Three basic conditions must, then, be satisfied before collateral estoppel will arise: the issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared as a party in the first action.... These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair opportunity to litigate the issue or fact in question.

*Id.* at 570, 534 A.2d at 693 (citations omitted).

The main contention of Mirulla in opposition to Langlois' summary judgment motion is that there was no finding of "malice" in the state court proceeding. Although it is true that "malice" was not per se found by the state court, the written decision of the state court nevertheless is replete with factual findings from which it can be inferred that Mirulla knew his acts were certain or substantially certain to cause injury to Langlois.

Illustrative of the factual findings of the state court from which "malice" can be inferred are the state court's findings relating to Mirulla's willful termination of Langlois' utility service. Mirulla not only willfully shut off the hot water service to Langlois' apartment, but also refused to discuss the lack of hot water service with Langlois' attorney

---

5. *Nottinghman Partners v. Trans–Lux Corp.,* 925 F.2d 29, 32 (1st Cir.1991). The interplay between a federal court's jurisdiction and preclusion principles derives from 28 U.S.C. § 1738, which provides in part that "[t]he judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State...." The rule as stated by the Supreme Court is that "a federal court must

give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *See also McDonald v. West Branch,* 466 U.S. 284, 287, 104 S.Ct. 1799, 1801, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982).

when asked. Neither did Mirulla make any meaningful attempts to restore Langlois's hot water. Langlois and her family were without hot water for a total of nineteen days, forcing Langlois and her family to go elsewhere to bathe or shower during that time due to the lack of hot water.

From those actions alone it is difficult to draw any conclusion other than the conclusion that Mirulla intended to make Langlois feel so uncomfortable, inconvenienced and intimidated that she would leave the apartment on her own accord.[6] That being the case, it is difficult to imagine, even when considering all of the facts in a light most hospitable to Mirulla and indulging all reasonable inferences in Mirulla's favor, that Mirulla did not know his actions would cause or were substantially certain to cause Langlois harm. It is no wonder, given Mirulla's conduct, that Langlois "was so upset by [Mirulla's] actions that she was afraid to leave her children at home with a babysitter ... became distracted at work, and consequently lost her job." (Order at 10) (adopting facts # 26 and 27).

Whether the three elements of collateral estoppel are satisfied is also without doubt. The parties and facts before this Court are the same as those before the state court. Moreover, the facts from which malice can be inferred were actually litigated and necessary to the state court's final determination that Mirulla's violations of New Hampshire's landlord and tenant laws and its Consumer Protection Act were "willful and knowing." As the following passages from the state court's March 19, 1992 Order make clear, Mirulla had a full and fair opportunity to litigate the issue barring him:

> The Defendant testified in his own defense that the Plaintiff was allowing unauthorized people to stay in the premises; that the lack of hot water was caused by a leak; that he tried innumerable times but could not obtain a plumber; that the leak apparently fixed itself and hot water was restored 19 days after it was originally turned off; that although he retained an attorney and instituted eviction proceedings, the services of the attorneys were too costly and he subsequently undertook to remedy the situation himself....
>
> ....
>
> Although the Defendant claimed to be hardworking and unsophisticated, his testimony and actions show otherwise. This is demonstrably true when viewing his testimony as to the lack of hot water, the so-called innumerable attempts to obtain a plumber, and the hot water leak fixing itself. Even more persuasive is Plaintiff's Exhibit 7, a landlord and tenant writ, signed by the Defendant and his wife, dated June 12, 1989. The Defendant's lack of knowledge of the law and his claim that the Plaintiff abandoned the apartment is betrayed by Exhibit 7, which was served on [Plaintiff's friend] on June 13, 1989 in the apartment while Plaintiff was in Maine.

Order at 5, 6. In short, as hard as Mirulla may have tried he was not successful in convincing the state court that his actions, including his willful termination of utility services, were innocent actions undertaken without any intended end result. (*See* Order at 10) (adopting fact # 15).

Actions often speak louder than words. *See C.I.T. Fin. Servs., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) (malicious intent can be shown by direct evidence of specific intent or through indirect evidence, such as experience in the business, that the actor knew he was violating another's rights). In this case, the facts supporting the state court's judgment, which were fully and fairly litigated and essential to the judgment, establish that Mirulla acted both willfully and with malice when he engaged in his campaign of intentional harassment to force Langlois to vacate her apartment without judicial process. Furthermore, it does not matter whether the resulting harm to Langlois may not have been the primary purpose of Mirulla's intentional acts. *E.g., Murabito v. Bryl (In re Bryl)*, 156 B.R. 5, 8 (Bankr.D.N.H.1993). The relevant inquiry is whether Mirulla engaged in deliberate acts which he knew were certain or substantially certain to result in injury to Langlois. The moving and responsive documents, record

---

**6.** In fact, the state court expressly found that Mirulla terminated Langlois' hot water service "because he wanted [Langlois] to leave the apartment." (Order at 10) (adopting fact # 15).

made at hearing and the other files and records in this adversary proceeding, even when viewed in a light most hospitable to Mirulla and indulging all reasonable inferences in Mirulla's favor, provide an overwhelmingly affirmative answer to this question. Accordingly, for all of the reasons set forth in this Memorandum Opinion a separate order will be entered granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.