**In re David G. FALL, Debtor.**

**Daniel E. SCHACHTER, Plaintiff,**

**v.**

**David G. FALL, Defendant.**

**Bankruptcy No. 91–12333–MWV.**
**Adv. No. 91–1198–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

Nov. 20, 1995.

James F. Raymond, Kimberly Kirkland, Upton, Sanders & Smith, Concord, NH, for Plaintiff Daniel E. Schachter.

Dennis Bezanson, Chapter 7 Trustee, Portsmouth, NH.

Gerri Karonis, Manchester, NH, for United States Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it the complaint of Daniel E. Schachter ("Plaintiff") against the debtor, David G. Fall ("Defendant"), seeking a determination that a debt owed from the Defendant to the Plaintiff be excepted from discharge under sections 523(a)(6) and (9) of the Bankruptcy Code. For the reasons set out below, the Court finds that the debt is not excepted from discharge pursuant to sections 523(a)(6) or 523(a)(9) of the Bankruptcy Code.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### PROCEDURAL HISTORY

This case commenced in the United States District Court for the District of New Hampshire, on June 12, 1991 (Civil Action No. 91–

262–D), seeking damages for personal injury as a result of a boating accident on Lake Winnipesaukee on May 26, 1991. On July 31, 1991, the Defendant filed an original petition under Chapter 7 of the Bankruptcy Code and, upon said filing, the district court action was stayed.

On November 22, 1991, the instant complaint was filed in the Bankruptcy Court for the District of New Hampshire. The Defendant, who was then represented by counsel, filed his answer on December 31, 1991. A pretrial was held on January 16, 1992, at which hearing it was determined that a criminal case was pending against the Defendant alleging that he had operated his boat while under the influence at the time of the boating accident. The matter was continued pending a determination of this criminal matter. On July 23, 1992, this Court granted a motion of Defendant's counsel to withdraw, and the Defendant has been pro se since that date.

On March 7, 1994, over two years after the original pretrial, the Laconia District Court found the Defendant not guilty of operating a boat under the influence. Based on that finding, the Defendant moved to have the within complaint dismissed to which the Plaintiff filed an objection. A memorandum opinion and order was issued by this Court on November 3, 1994, denying Defendant's motion.

On December 22, 1994, the Plaintiff filed a motion advising the Court that he had discovered that the Defendant pled guilty to second degree assault in the Belknap County Superior Court in connection with the boating accident which is the subject of this complaint. On January 6, 1995, the Plaintiff filed his motion for summary judgment based on the Belknap County Superior Court action, which this Court denied by memorandum opinion and order issued on February 23, 1995. On March 3, 1995, the matter was tried before this Court at which time the Court took the matter under advisement.

### APPLICABLE LAW

The complaint seeks a determination that the damages resulting from the boating accident are excepted from discharge under sections 523(a)(6) and (9) of the Bankruptcy Code. Those sections provide that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> ....
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
>
> ....
>
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

11 U.S.C.A. §§ 523(a)(6) and (9) (West 1993 & Supp.1995). Because section 157(b)(5) of Title 28 provides that personal injury tort claims shall be tried in the United States District Court and not in the bankruptcy court, the only issue before this Court is whether the debt should be excepted from discharge. Therefore, this Court considered only the discharge issue and no evidence was taken with respect to damages for personal injury.

### FACTS

On the night of May 26, 1991, at approximately 11:00 p.m., the Plaintiff was en route by boat from the public docks at Meredith, New Hampshire, on Lake Winnipesaukee to Wye Landing. The night was stormy and the Plaintiff testified that he was proceeding on Meredith Bay at a speed that would just keep his boat on a plane or level so that he could see. The boat was covered except for the center flap through which the Plaintiff stood along with his passenger, Dr. Neil Sandson, in order to be able to see in the dark and the rain. At some point while en route, the Plaintiff and the Defendant were involved in a boating accident. The Plaintiff testified that he has no memory of the accident. Dr. Sandson, the passenger, testified that at some point they became aware of a boat approaching off their starboard bow at close range and attempted to avoid a collision by turning to port, but the collision ensued.

Michael Plunkett, who was then employed as a district supervisor in the Marine Patrol Bureau of the New Hampshire Department of Safety, was in charge of reconstructing the accident. He testified that the Defendant's boat hit the Plaintiff's boat on the starboard side, just below the driver's seat, proceeded over the area where the driver was located and actually became airborne before exiting the port side of the Plaintiff's boat. To positively identify the Defendant's boat as being in the accident, Plunkett testified that materials found on the Defendant's boat were positively identified as being from the Plaintiff's boat.

Dr. Sandson testified that shortly after the accident, after regaining his bearings, finding the injured Plaintiff and tending to him, he then commenced calling for help. The Defendant, after the collision, did not remain at the accident scene, did not attempt to determine the extent of the damage to the Plaintiff's boat or the extent of injury to its passengers and gave no assistance at all to the passengers on the boat with which his boat had just collided. As luck would have it, the Defendant's boat was shortly thereafter stopped by a marine patrol officer who noticed that it was proceeding without a bow light, which was evidently destroyed in the collision. Upon stopping the Defendant's boat, the marine patrol officer testified that he noticed damage to the Defendant's boat and detected a strong smell of alcohol. Officer Dunleavy of the marine patrol, the officer who had stopped the Defendant's boat, testified that when he asked the Defendant if he had been in an accident, he replied that he had been in an accident earlier by Weirs Beach. When further asked if he reported the accident, the Defendant responded that he was on his way to the Meredith Town Dock to report it to his insurance company, although at the time he was stopped, he was headed in the opposite direction. When the Defendant was asked if he had exchanged any information with the driver of the other boat, Officer Dunleavy testified that the Defendant replied, "No, the guy didn't stick around long enough. I've been driving a boat since I was thirteen and I've never seen anything like it. It's unreal." (Transcript at 40–41.) The Defendant was eventually given a field sobriety test and arrested. The Defendant's boat, with three passengers, was towed to the marine patrol headquarters in Gilford.

About the same time as this stop was made, the cries of Dr. Sandson had been heard by individuals on the shore and the accident had been reported to the marine patrol and to other rescue units. The Plaintiff and Dr. Sandson were transported to the Laconia Hospital and the Plaintiff was shortly thereafter transferred to the Concord Hospital. Through the efforts of the marine patrol and local fire departments, the Plaintiff's boat and debris from the wreckage were preserved, towed to shore and eventually transported to marine patrol headquarters by truck, further enabling the reconstruction of the accident. It is undisputed that the accident caused personal injury to the Plaintiff and injury to his property, the boat.

The Defendant was subsequently found innocent of boating while intoxicated by the Laconia District Court. However, a guilty finding was entered by the Belknap County Superior Court for the offense of second degree assault, a Class B felony, on April 20, 1992.[1]

At trial, the Court gave the Defendant, who appeared pro se, the opportunity to testify on his own behalf and be subject to cross-examination, an invitation which the Defendant declined to accept.

### DISCUSSION

I. 11 U.S.C. § 523(a)(6)

 In *Langlois v. Mirulla (In re Mirulla)*, 163 B.R. 912 (Bankr.D.N.H.1994), this Court adopted the following standard:

[T]o establish a ground for nondischargeability of a debt under section 523(a)(6) of the Bankruptcy Code it must be proven that the debtor engaged in deliberate acts which he knew were certain or substantially certain to result in injury to property. If this is established the debt will remain

---

1. The Defendant entered a nolo plea upon which the court took the guilty finding. Since this Court is not basing its decision on that finding, this fact is not important to this decision.

nondischargeable even though the resulting harm was not the *primary* purpose of the intentional acts.

*Id.* at 915. Following that standard, in order for this Court to find the Defendant's debt to the Plaintiff is excepted from discharge, the Court would have to find that the Defendant did certain acts which he knew were certain or substantially certain to cause injury to the Plaintiff. The record before the Court cannot sustain such a finding. While the actions of the Defendant after the collision may have been reprehensible, the injury to both the Plaintiff and his property were caused by the accident and not by the Defendant's post-accident behavior.

The evidence in the record of the pre-accident events indicates that the night of the accident, May 26, 1991, was dark and rainy. The visibility was poor and the Plaintiff was driving his boat while standing with the center flap of the boat cover open. The Defendant's accident report also indicates he was proceeding with his head through the canvas in order to see. Dr. Sandson testified that he first noticed the Defendant's boat off the starboard bow at a bearing of approximately one o'clock. Both boats were proceeding at a speed fast enough to plane, although there is no definite evidence as to how fast each boat was going. In an attempt to avoid a collision, the Plaintiff's boat turned to port, which is consistent with the physical evidence of the crash.[2] There is further evidence that the Defendant had been drinking, but there is no evidence of when or how much. Based on this set of facts, the Court can come to no other conclusion than that the collision which caused the injury was an accident, probably the result of all of the above factors but not the result of a deliberate act or acts by the

Defendant which he knew were certain or substantially certain to cause injury to the Plaintiff. As to the post-collision actions of the Defendant in not assisting the Plaintiff and his passenger and leaving the scene of the collision, they were deliberate and wrongful acts, but there is no evidence that they resulted in personal injury to the Plaintiff or his property. The injury occurred at the time of the collision and not thereafter.

Based on the above, the Court finds that the Defendant's debt to the Plaintiff is not excepted from discharge under section 523(a)(6).

## II. 11 U.S.C. § 523(a)(9)

In order to except the Defendant's debt to the Plaintiff from discharge under section 523(a)(9), this Court must find that the Plaintiff's personal injury was caused by the Defendant's unlawful operation of a motor vehicle because the Defendant was intoxicated from using alcohol, a drug or other substance. There is no evidence of a drug or another substance in the record. The Court previously denied the Defendant's motion for summary judgment on this count on the grounds that the standard of evidence in this Court on the issue is the preponderance of the evidence standard, while in the criminal proceeding the standard was beyond a reasonable doubt, which is a higher standard. However, before the Court addresses the issue of intoxication, it must first decide whether a "boat" is a "motor vehicle" for purposes of section 523(a)(9).

The Plaintiff, in a memorandum of law filed with this Court in a footnote cites the case of *Williams v. Radivoj*, 111 B.R. 361

2. Pertinent provisions of N.H. RSA § 270–D:2, General Rules for Vessels Operating on Water, which apply to Lake Winnipesaukee are as follows:

> II. (a) It shall be the duty of each vessel to keep to the right when vessels are approaching each other head on.
> (b) When the courses of vessels are so far to the starboard of each other as not to be considered as approaching head on, they shall keep to the left.
> III. When the vessels are crossing courses or approaching each other in an oblique direction which may involve risk of collision, the

> vessel which has the other on its starboard side shall keep out of the way of the other, allowing the latter vessel to keep its course and speed.
> . . . .
> V. If, when vessels are approaching each other, either vessel fails to understand the course or intention of the other from any cause, such vessel or vessels shall immediately *slow to a speed barely sufficient for steerage* until the vessels have safely passed each other. If it appears the danger of collision is imminent both vessels shall stop or reverse and not proceed until such danger has been averted.
> N.H.Rev.Stat.Ann. § 270–D:2 (Supp.1994).

(S.D.Fla.1989), for the proposition that a boat is a motor vehicle for the purpose of section 523(a)(9) of the Bankruptcy Code. There is no question that *Williams* stands for that proposition. However, this Court disagrees with that holding and finds the better-reasoned decision to be *Willison v. Race (In re Race),* 159 B.R. 857 (Bankr.W.D.Mo.1993). That court, based on the principles that the exception to discharge found in section 523 must be narrowly construed against an objecting creditor and liberally in favor of the debtor, and an analysis of the plain meaning of the statute is to be used in construing the Bankruptcy Code, found that a boat is not a motor vehicle for purposes of section 523(a)(9).

While not reproducing large portions of that decision, this Court adopts the reasoning found in pages 859 through 861 of that decision as it applies to federal bankruptcy law.[3] In the list of examples found in those pages—definitions of the term motor vehicle enacted by Congress—this Court would add section 4 of chapter 1 of Title 1. This section defines vehicle as "every description of carriage or other artificial contrivance used, or capable of being used, as a means of transportation on land." 1 U.S.C.A. § 4 (West 1985).

■ The result is the same under New Hampshire law. New Hampshire RSA 259:60 defines "motor vehicle" as follows:

I. Except where otherwise specified in this title, any self-propelled vehicle not operated exclusively on stationary tracks, including ski area vehicles;

II. As used in RSA 261:148 relative to municipal permits for registration, includes all trailers and semi-trailers as defined herein and travel trailers as determined by the commissioner of revenue administration; however, snow traveling vehicles as defined herein, mobile homes, house trailers and mopeds shall not be so included;

III. For purposes of the financial responsibility statutes, any self-propelled vehicle not operated exclusively upon stationary tracks, except farm tractors, crawler-type tractors, and mopeds;

IV. For purposes of the road toll statutes, all vehicles, engines, machines or mechanical contrivances which are propelled on the public highways by internal combustion engines, electric motors, steam engines, or other alternate sources of energy except human or animal power.

N.H. RSA § 259:60 (1993). New Hampshire RSA 259:122(I) then defines "vehicle" as "every mechanical device in, upon or by which any person or property is or may be transported or drawn upon a way, excepting devices used exclusively upon stationary rails or tracks." These two provisions make it absolutely clear that the term "motor vehicle" pertains to a means of transportation on land, not water.

In contrast to the above, New Hampshire RSA 270–D:1 contains the following definitions:

I. "Boat" means every description of watercraft other than seaplanes, capable of being used or used as a means of transportation on the water and which is primarily used for noncommercial purposes, or leased, rented, loaned or chartered to another for such use.

. . . .

VII. "Motorboat" means any vessel being propelled by machinery, whether or not such machinery is the principal source of propulsion.

. . . .

XI. "Vessel" means any type of watercraft used or capable of being used as a means of transportation on water, except a seaplane.

*Id.* § 270–D:1 (Supp.1994). The applicable criminal statute in effect at the time of the accident in 1991 then stated that "[a] person is guilty of a misdemeanor if he operates or attempts to operate a boat while under the influence of intoxicating liquor or a controlled drug. 'Boat' means and includes every type of watercraft used or capable of being used as a means of transportation on the water." *Id.* § 631:5 (1986) (repealed and replaced by RSA § 270:48–a effective January 1, 1993).

3. A copy of *Willison v. Race* is attached as Appendix A.

The current statute contains similar definitions. Under the current criminal statute, " '[b]oat' means and includes every type of watercraft used or capable of being used as a means of transportation on the water." *Id.* § 270:48 (1987). Section 270:48–a of the statute then provides that "[n]o person shall operate or attempt to operate a boat while under the influence of intoxicating liquor or a controlled drug or any combination of intoxicating liquor and a controlled drug." *Id.* § 270:48–a(I) (Supp.1994). In recent years, the United States Supreme Court has continually held that the statute must first be construed according to its plain meaning. This Court believes that the meaning of "motor vehicle" is clear under both federal and state law and does not include a "boat." Since the court has found that the Debtor was not operating a motor vehicle, it does not reach the issue of intoxication. The complaint to except the Defendant's obligation from discharge pursuant to section 523(a)(9) must be denied.

For all of the foregoing reasons, this Court finds in favor of the Defendant, David Fall. This opinion constitutes the Court's findings of facts and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a final judgment consistent with this opinion.

## APPENDIX A

### IN RE RACE
Cite as 159 B.R. 857 (Bkrtcy.W.D.Mo. 1993)

In re Harley L. RACE, Debtor.

Charles WILLISON, Plaintiff,

v.

Harley L. RACE, Defendant.

Bankruptcy No. 93–40406–2.

Adv. No. 93–4048–2.

United States Bankruptcy Court,
W.D. Missouri.

Oct. 21, 1993.

Personal injury plaintiff in stayed state court action against Chapter 7 debtor filed dischargeability complaint arising out of motorboat accident, and debtor filed motion to dismiss. The Bankruptcy Court, Frank W. Koger, Chief Judge, held that motorboat was not "motor vehicle" for purposes of discharge exception for death or personal injury caused by debtor's operation of motor vehicle while intoxicated.

Motion to dismiss granted.

**1. Bankruptcy** ⊛2162

**Federal Civil Procedure** ⊛1829

When considering motion to dismiss for failure to state claim upon which relief can be granted, court must construe allegations in complaint in light most favorable to plaintiff. Fed.Rules Bankr.Proc.Rule 7012, 11 U.S.C.A.; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**2. Bankruptcy** ⊛3341

Exceptions to discharge must be narrowly construed against objecting creditor and liberally in favor of debtor. Bankr. Code, 11 U.S.C.A. § 523.

**3. Bankruptcy** ⊛2021.1

Task of resolving dispute over meaning of provision of Bankruptcy Code begins with language of statute itself; court must carefully consider natural reading of phrase, grammatical structure of statute, and terminology used throughout Code, and it must find natural interpretation of statutory language that does not conflict with any significant state or federal interest, nor with any aspect of Code. Bankr. Code, 11 U.S.C.A. § 101 et seq.

**4. Bankruptcy** ⊛3355(5)

For purposes of Bankruptcy Code provision excepting from discharge debt for death or personal injury caused by debtor's unlawful operation of motor vehicle while intoxicated, motorboat or watercraft was not "motor vehicle"; motor vehicle is undefined in Code, normal connotation of term encompasses only vehicles designed for use on highways, legislative history of Code provision indicated that intent was to deter alcohol-related highway fatalities, "motor vehicle" is defined as vehicle used on highways in other federal statutes, and definition is consistent with Missouri state law. Bankr.Code, 11 U.S.C.A. § 523(a)(9).

See publication Words and Phrases for other judicial constructions and definitions.

**5. Bankruptcy** ⊛2002

Although interpretation of Bankruptcy Code is matter of federal law and bankruptcy court is not bound by labels state

may choose to attach to its legislation, natural interpretation of statutory language should not conflict with any significant state or federal interest, and so it is appropriate to analyze state law as persuasive authority. Bankr.Code, 11 U.S.C.A. § 101 et seq.

**6. Automobiles ⟜1**

Missouri state law recognizes distinction between "motor vehicles" and "watercraft," and gives term "motor vehicle" its ordinary, customary meaning of vehicle designed for use upon highway. V.A.M.S. §§ 303.020, 306.010.

**7. Bankruptcy ⟜3355(5)**

Operation of motorboat under the influence, like operation of automobile under the influence, lacks requisite intent to fall under Bankruptcy Code provision excepting from discharge debt for willful and malicious injury by debtor to another entity. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

---

Erlene Krigel, Kansas City, MO, for plaintiff.

Michael Tamburini, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendant.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case comes before the Court on Defendant Harley Race's Motion to Dismiss Plaintiff's Complaint to Determine Dischargeability of Debt. A hearing was held on October 13, 1993 to consider Defendant's motion and the Plaintiff's dischargeability complaint. The Court announced its findings and conclusions at the close of the hearing. This Memorandum Opinion memorializes and explains those findings.

### FACTS

On June 9, 1990, the Defendant, Harley Race, was operating a motorboat on the Lake of the Ozarks. The Defendant had been drinking alcohol. The Defendant collided with another motorboat in which the Plaintiff, Charles Willison, and his wife, Brenda Willison, were passengers. Both the Plaintiff and his wife suffered injuries as a result of the accident.

The Plaintiff and his wife filed suit against the Defendant in the Circuit Court of Jackson County, Missouri, case no. CV90–17496. The Plaintiff's personal injury claims were severed from those of his wife whose claims were tried to a jury. On May 15, 1992 the jury returned a verdict in favor of Brenda Willison awarding her $250,000 in compensatory damages. The jury found that the Defendant was negligent in the operation of his motorboat, but was not liable for punitive damages.

Based upon the jury findings in Brenda Willison's action, the parties agreed to a stipulation of facts in the Plaintiff's action on February 18, 1993. The parties stipulated that the Defendant was liable for negligence in the operation of his motorboat and was not liable for punitive damages. The only issue left to be resolved in the state court proceeding was the amount of damages.

On March 5, 1993, the Defendant filed a voluntary chapter 7 petition with this Court staying the state court action. The Defendant listed his debt to the Plaintiff on Schedule F as contingent and unliquidated. Plaintiff filed his dischargeability complaint on April 14, 1993 in which he alleged that the debt was one for injuries sustained by the Defendant's operation of a motor vehicle while intoxicated under 11 U.S.C. § 523(a)(9) (1992). On June 18, 1993, the Court granted a discharge to the debtor on all dischargeable debts. The Defendant filed a motion to dismiss this action under Bankruptcy Rule 7012 on September 13, 1993. A hearing was held on October 13, 1993 at which time the Court heard statements of counsel and legal arguments.

### DISCUSSION

■ This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and 28 U.S.C. § 1334. When considering a motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6), the Court must construe the allegations in the complaint in the light most

favorable to the plaintiff. *Patterson v. Von Riesen,* 999 F.2d 1235, 1238 (8th Cir. 1993). *See* Bankr.R. 7012 (incorporating F.R.C.P. Rule 12(b)–(h)).

### A. Section 523(a)(9)

The Plaintiff based his dischargeability complaint on 11 U.S.C. § 523(a)(9) which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* ₄ \*
>
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance....

As a threshold issue, the parties disputed whether § 523(a)(9) applies to the operation of a motorboat or other watercraft while under the influence of alcohol. Since the statute makes no reference to the terms "motorboat" or "watercraft," Plaintiff can prevail only if the term "motor vehicle" includes a motorboat. Congress left the term "motor vehicle" undefined in the statute. *See* 11 U.S.C. § 101. Plaintiff urged a broad construction of the term to include any vehicle operated by a motor including, automobiles, motorcycles, mopeds, motor scooters, airplanes, motorboats, watercraft, and the like. Defendant argued for a narrow construction to include only automobiles.

This is a case of first impression in this Circuit. The Court can find only one reported case to date addressing this issue. *See Williams v. Radivoj,* 111 B.R. 361 (S.D.Fla.1990). In *Williams v. Radivoj,* Judge Scott of the Southern District of Florida affirmed the conclusion of the bankruptcy court that a motorboat was within the definition of "motor vehicle." Judge Scott found that Congress had "intended to give effect to a national public policy against drunk driving" and "was concerned with the consequences of drunk driving, and not the means." *Id.* at 362–63.

Therefore, Judge Scott read "motor vehicle" expansively to give effect to a perceived goal of Congress.

■ While the Court agrees with the sentiments expressed in Judge Scott's *Williams* opinion, the Court's analysis of the law compels a different conclusion. The Court disagrees with *Williams* for two reasons. First, it is a well settled principle that the exceptions to discharge found in § 523 must be narrowly construed against an a objecting creditor and liberally in favor of the debtor. *See, e.g., Perez v. Campbell,* 402 U.S. 637, 638, 91 S.Ct. 1704, 1705, 29 L.Ed.2d 233 (1971); *In re Long,* 774 F.2d 875, 879 (8th Cir.1985); *First State Ins. Co. v. Bryant (In re Bryant),* 147 B.R. 507, 509 (Bankr.W.D.Mo.1992). Second, *Williams* was decided before a number of recent Supreme Court opinions clearly established that an analysis of the plain meaning of the statute is to be used in construing the Bankruptcy Code. *See, e.g., Pioneer Inv. Serv. Co. v. Brunswick Assocs.,* —— U.S. ——, —— – ——, 113 S.Ct. 1489, 1494–95, 123 L.Ed.2d 74 (1993); *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993); *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992); *Toibb v. Radloff,* —— U.S. ——, ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991); *United States v. Ron Pair Enter. Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *see also Dewsnup v. Timm,* —— U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992) (J. Scalia dissenting). Using these two interpretive methods, the Court reluctantly finds that a motorboat or watercraft does not fall within the definition of "motor vehicle."

■ The task of resolving the dispute over the meaning of § 523(a)(9) "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enter. Inc.,* 489 U.S. at 241, 109 S.Ct. at 1030. A court must carefully consider the "natural reading of the phrase," "the grammatical structure of the statute," and "the terminology used throughout the Code." *Id.* at 241–42, 109

S.Ct. at 1030–31. Moreover, the court must find the natural interpretation of the statutory language that "does not conflict with any significant state or federal interest, nor with any other aspect of the Code." *Id.* at 245, 109 S.Ct. at 1033.

■ As stated earlier, § 523(a)(9) does not contain the term "motorboat" or "watercraft," and the term "motor vehicle" is undefined in the Code. *See* 11 U.S.C. § 101. The term "motor vehicle" appears nowhere else in Title 11. The term "motor vehicle" is generally defined as:

> an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways.

Webster's Ninth New Collegiate Dictionary 775 (1986). The ordinary, customary usage of the term encompasses only vehicles designed for travel on the highways.

Only when the term "motor vehicle" is broken down into its constituent parts does the term become subject to another interpretation. The term "motor" is an adjective describing "vehicle" and when used as an adjective is defined as:

> a: equipped with or driven by a motor b: of, relating to, or involving an automobile c: designed for motor vehicles or motorists.

*Id.* The term "vehicle" is defined as:

> a means of carrying or transporting something: CONVEYANCE: as a: MOTOR VEHICLE b: a piece of mechanized equipment.

*Id.* One of the three definitions of "motor" supports the interpretation that a "motor vehicle" is any vehicle with a motor including an automobile, a boat or an airplane. This definition is in fact so expansive that it would include riding lawn mowers, go-carts and electric wheel chairs. The Court does not accept this expansive definition as the natural reading of the term "motor vehicle" because (1) discharge exceptions must be narrowly construed and (2) the normal connotation encompasses only vehicles designed for use on the highways.

When the plain language is clear, the court need go no further in its inquiry. *United States v. Ron Pair Enter. Inc.*, 489

U.S. at 241, 109 S.Ct. at 1030; *see Toibb v. Radloff*, —— U.S. at ——, 111 S.Ct. at 2199. The conclusion that the natural reading of the term "motor vehicle" includes only vehicles designed for use on the highways is dispositive. However, in light of *Williams*, the Court believes that further discussion would be helpful.

The Court's decision is consonant with the legislative history of § 523(a)(9), other federal statutes, and state law. When originally enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the section had virtually no reported legislative history. *In re Ganzer*, 54 B.R. 75, 76 (Bankr.D.Minn.1985). The section was amended in 1990 by the Criminal Victims Protection Act of 1990, Pub.L. 101–581. Looking at Congressional discussion of the Criminal Victims Protection Act, it seems clear that the intent of the legislature was to deter alcohol related *highway* fatalities. The discussion begins:

> In 1988 there were 23,352 alcohol-related highway fatalities in this country. A drunk driving crash in which an innocent victim is injured or killed is a tragedy.

S.Rep. No. 101–434, 101st Cong. 2nd Sess. 3 (1990) U.S.Code Cong. & Admin.News pp. 4065, 4066. The entire discussion is framed within the context of drunken automobile drivers. Also, the statements of Senator Danforth, who introduced the § 523(a)(9) into the Judgeship Act of 1984, were framed in the same context, the drunk driving of automobiles:

> Imagine the ... child [who] has been killed or permanently disabled by some fellow weaving down the road.... Now those who drink too much are not in any condition to operate an automobile, and they know that by choosing to drive they are endangering other people on the road.... Americans are beginning to realize that they don't have to put up with drunkenness on the highways..

129 Cong.Rec. S1622 (daily ed. February 24, 1983) (Statement of Senator Danforth). There is no reference in the legislative history to motorboats, watercraft, airplanes or any other craft, only automobiles. Thus,

## IN RE RACE
Cite as 159 B.R. 857 (Bkrtcy.W.D.Mo. 1993)

861

there is nothing in the legislative history to suggest Congress intended "motor vehicle" to mean anything other than its customary definition.

The Court's construction of "motor vehicle" is also consonant with Congressional use of the term in other statutes. In the National Traffic and Motor Vehicle Safety Act of 1966, as amended, Congress defined "motor vehicle" as:

> any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads and highways, except any vehicle operated exclusively on a rail or rails.

15 U.S.C. §§ 1391(3) and 1901(15) (1992). Similarly, in the Roberts Act, Congress defined "motor vehicle" as:

> any vehicle, self propelled or drawn by mechanical power, designed for use on the highways principally for the transportation of passengers except any vehicle designed or used for military field training, combat, or tactical purposes.

40 U.S.C. § 703(1) (1992). Congress has expressly defined the term "motor vehicle" in other contexts giving it its ordinary, customary meaning. Had Congress intended for the term to mean something else, Congress could have drafted additional or different language. But, they did not.

■ Finally, the Court's reading of "motor vehicle" is in accord with Missouri state law. The interpretation of the Bankruptcy Code is a matter of federal law, and the Court is not bound by the labels a state may choose to attach to its legislation. *In re Mount Moriah Elevator, Inc.*, 143 B.R. 905, 910 (Bankr.W.D.Mo.1992); *see In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983). Missouri law does not control. However, the Supreme Court stated that the natural interpretation of the statutory language should not conflict with any "significant *state* or federal interest" (emphasis added). *United States v. Ron Pair Enter. Inc.*, 489 U.S. at 245, 109 S.Ct. at 1033. Thus, it is appropriate to analyze state law as persuasive authority.

■ Title XIX of the Missouri statutory code ("Motor Vehicles, Watercraft and Avi-

ation") assigns separate Chapters for the regulation of motor vehicles and watercraft. See Chapter 303 ("Motor Vehicle Safety Responsibility Law") and Chapter 306 ("Watercraft Regulation"). Under Missouri law, "motor vehicle" is defined as:

> a self-propelled vehicle which is designed for use upon a highway, including trailers designed for use with such vehicles (except traction engines, road rollers, farm tractors, tractor cranes, power shovels and well drillers), and every vehicle which is propelled by electric power obtained from overhead wires but not operated upon rails.

V.A.M.S. § 303.020 (1993). Whereas, Missouri separately defines "motorboat" as:

> any vessel propelled by machinery having a rating of more than seven and one-half horsepower, whether or not such machinery is a principal source of propulsion.

V.A.M.S. § 306.010 (1993). Missouri recognizes a distinction between "motor vehicles" and "watercraft," and gives the term "motor vehicle" its ordinary, customary meaning.

Parenthetically, it seems Judge Scott in the *Williams* case was faced with a similar distinction under Florida law. *See Williams v. Radivoj*, 111 B.R. at 363. Judge Scott noted that because Florida had specifically passed drunk driving legislation for "vessels," the defendant could "find no safe harbor" under state law. *Id.* Unfortunately, Judge Scott missed the boat. The point of Florida passing a drunk driving law to cover "vessels" is not that the conduct was legal or illegal under Florida law; rather, Florida law recognized a distinction between "motor vehicles" and "vessels" such that any drunk driving laws intended to affect "vessels" must specifically include language to that effect.

The legislative history of 11 U.S.C. § 523(a)(9), federal law and state law all support the definition adopted by the Court. The term "motor vehicle" does not include a motorboat. The effect of this conclusion on the Plaintiff is unfortunate. The Defendant clearly injured the Plaintiff by his drunken cruise. Had Congress

thought of it, it probably would have included motorboats within § 523(a)(9). The fact that Congress through its inadvertence or lack of foresight did not include language to cover the present facts does not give this Court the authority to right that wrong. It is Congress' role to legislate, not the Court's. Should Congress desire to exclude from discharge debts arising from injuries caused by a defendant's operation of a motorboat while intoxicated, it may amend the statute.

### B. Section 523(a)(6)

The Plaintiff moved to amend his complaint on October 7, 1993, to include a dischargeability complaint under 11 U.S.C. 523(a)(6). The Court granted Plaintiff's motion to amend on October 8th, and the Plaintiff filed his amended complaint on October 12th. At the hearing, Plaintiff waived his § 523(a)(6) arguments. In light of the Eighth Circuit's ruling in *Cassidy v. Minihan*, 794 F.2d 340 (8th Cir.1986), the Court believes that it was wise for the Plaintiff to waive that argument. The *Cassidy* court concluded that § 523(a)(6), which bars the discharge of debts for "willful and malicious injury," does not apply to injuries resulting from the operation of an automobile under the influence of alcohol. *Id.* at 341. The court concluded that the section only bars discharge to "debts arising from intentionally inflicted injuries." *Id.* As with the operation of an automobile under the influence, the operation of a motorboat under the influence lacks the requisite intent to bring the claim within the purview of § 523(a)(6).

### CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss Plaintiff's Complaint to Determine Dischargeability is hereby GRANTED.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052.

SO ORDERED.